UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN SMITH, an individual,<br><br>　　　　Plaintiff,<br>v.<br><br>AMYLIN PHARMACEUTICALS, LLC f/k/a AMYLIN PHARMACEUTICALS, INC., a limited liability company; McKESSON CORPORATION, a Delaware corporation; ELI LILLY AND COMPANY, a corporation; NOVO NORDISK, INC., a Delaware corporation; NOV NORDISK A/S, a foreign corporation; and Does 1 through 100,<br><br>　　　　Defendants. | Civil No.13cv1236 AJB (MDD)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. No. 9) |

　　　Presently before the Court is Plaintiff Dawn Smith's ("Plaintiff") motion to remand pursuant to 28 U.S.C. § 1447(c). (Doc. No. 9.) Defendant Amylin Pharmaceuticals LLC f/k/a Amylin Pharmaceuticals, Inc. ("Amylin") filed an opposition on June 26, 2013, (Doc. No. 11), and Plaintiff filed a reply on July 3, 2013, (Doc. No. 12). In accordance with Civil Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers and without oral argument. Accordingly, the motion hearing scheduled for July 25, 2013, is hereby vacated. For the reasons set below, the Court GRANTS Plaintiff's motion to remand. (Doc. No. 9.) The Clerk of Court is instructed to remand the action to San Diego Superior Court.

## BACKGROUND

On April 4, 2013, Plaintiff commenced this products liability action in San Diego Superior Court, alleging seven state law causes of action against all Defendants for: (1) strict liability based on inadequate warnings; (2) strict liability based on a design defect: (3) negligence; (4) breach of the implied warranty of merchantability; (5) breach of express warranty; (6) negligent misrepresentation; and (7) fraudulent concealment. (Doc. No. 1, Ex. A.) The Complaint alleges Plaintiff developed pancreatic cancer as a result of her ingestion of the prescription drugs Byetta and Victoza, which were prescribed to Plaintiff to treat her Type 2 diabetes. (Compl. ¶¶ 1, 2, 72.) Plaintiff alleges both Byetta and Victoza were manufactured by Amylin and Novo Nordisk Inc./Novo Nordisk A/S ("Novo Nordisk"), and that McKesson Corporation ("McKesson") not only distributed Byetta, but also partnered with Amylin and Eli Lilly and Company ("Eli Lilly") to assist pharmacists, counsel patients, and market, promote, and distribute safety information regarding Byetta, (*Id*. at ¶¶ 19-29.)

On May 24, 2013, Amylin removed the action to this Court on the basis of complete diversity between Plaintiff and all properly joined Defendants. (Doc. No. 1 ¶ 3.) Amylin contends McKesson was fraudulently joined, and therefore McKesson's citizenship should be disregarded for purposes of determining the right to remove the action based on complete diversity. Eli Lilly and Novo Nordisk filed their consent to and joinder in Amylin's notice of removal on May 23, 2013 and May 24, 2013, respectively. (Doc. No. 1, Exs. B, C.) McKesson did not file a notice of consent. Plaintiff filed the instant motion to remand on June 12, 2013. (Doc. No. 9.)

## LEGAL STANDARD

The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove an action when a case originally filed in state court presents a federal question, or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1441(a)

and (b); 28 U.S.C. §§ 1331, 1332(a). "[J]urisdiction in a diversity case is determined at the time of removal," *Am. Dental Indus., Inc. v. EAX Worldwide, Inc.*, 228 F. Supp. 2d 1155, 1157 (D. Or. 2002), and only state court actions that could originally have been filed in federal court can be removed, 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 82 L .Ed. 845 (1938) ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction . . . Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction").

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

## DISCUSSION

Plaintiff alleges the instant action should be remanded because: (1) the Court lacks subject matter jurisdiction over the matter because Plaintiff and Defendant McKesson are both citizens of California; and (2) Amylin's notice of removal was procedurally defective because it violated the forum defendant rule and the unanimity rule.[1]  Therefore, because Plaintiff and Defendant McKesson are both citizens of California, and McKesson did not join Amylin's notice of removal, Plaintiff contends remand is re-

---

[1] Plaintiff is a citizen of California, Amylin is a limited liability company and is thus a citizen of both Delaware and New York, Eli Lilly is a citizen of Indiana, Novo Nordisk Inc. is a citizen of both Delaware and New Jersey, Novo Nordisk A/S is a foreign corporation and is thus a citizen of Denmark, and McKesson is a citizen of both Delaware and California.

quired. Because the Court finds McKesson was not fraudulently joined, and remands the action to San Diego Superior Court on that basis alone, the Court does not address the parties' respective arguments regarding the procedural defects in Amylin's notice of removal.

## I. Diversity Jurisdiction

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . " and there is complete diversity between the parties, i.e., all plaintiffs have a citizenship different than all defendants. 28 U.S.C. § 1332(a); *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"); *Caterpillar*, 519 U.S. at 68 & n.3. "An exception to the requirement for complete diversity exists however, when a non-diverse defendant has been fraudulently joined for the purposes of defeating diversity jurisdiction." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "In that case, the district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent." *Pasco v. Red Robin Gourmet Burgers, Inc.*, No. 11-cv-01402 AWI-SKI, at *2 (E.D. Cal. November 17, 2011).

### A.   Complete Diversity and Fraudulent Joinder

Amylin contends the Court has subject matter jurisdiction over the matter because there is complete diversity of citizenship between Plaintiff and each of the properly joined Defendants—Amylin, Eli Lilly, and Novo Nordisk.[2] Although Amylin admits that Plaintiff and Defendant McKesson are both citizens of California, and that McKesson failed to join Amylin's notice of removal, Amylin argues McKesson's citizenship and failure to join the notice of removal should be ignored for purposes of establishing

---

[2] Amylin also contends that the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff does not contest this amount, and the Court finds Amylin's contentions adequately plead.

diversity jurisdiction because McKesson was fraudulently joined.

"Fraudulent joinder is a term of art" and does not require an ill motive. *McCabe*, 811 F.2d at 1339; *see also Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000) (stating that the court need not find that the joinder of the non-diverse party was for the purpose of preventing removal in order to find fraudulent joinder). Instead, joinder is deemed fraudulent if the plaintiff fails to state a cause of action against the non-diverse defendant, and "that failure is obvious according to the well-settled rules of the state." *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1175; *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998); *McCabe*, 811 F.2d at 1339. This requires the Court to find that "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Briano*, 126 F. Supp. 2d at 1296; *Hunter v. Phillip Morris*, 582 F.3d 1039, 1044-46 (2009) (quoting *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) (finding fraudulent joinder does not apply "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint"); *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (stating that diversity jurisdiction is lacking "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants."). Therefore, a non-diverse defendant is deemed to be fraudulently joined, if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the non-diverse defendant. *Nasrawi*, 776 F. Supp. at 1169-70 (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989).

In making this determination, "[t]he court's job is not to determine whether the plaintiff will actually or even probably prevail on [the] merits of his claim, but rather to evaluate whether there is any possibility [the] plaintiff may do so." *Archuleta v. Am. Airlines, Inc.*, No. CV-00-1286 MMM (SHX), 2000 WL 656808, at *8 (C.D. Cal. May 12, 2000); *Bear Valley Family, L.P. v. Bank Midwest, N.A.*, No. ED-CV-10-905 PSG

(JEMx), 2010 WL 3369600, at *2 (C.D. Cal. Aug. 23, 2010) (stating that courts generally disfavor the doctrine of fraudulent joinder, and as a result, any ambiguity of law or fact must be resolved in favor of remand). Therefore, Amylin bears the heavy burden of proving McKesson's joinder was fraudulent. *See Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (stating that the removing party must prove fraudulent joinder by "clear and convincing evidence"); *Burris v. AT & T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006) (stating that remand must be granted unless the defendant shows that the plaintiff "would not be afforded leave to amend his complaint to cure [the] purported deficiency").

### 1. Federal Preemption

Amylin's fraudulent joinder argument is two-fold. First, Amylin argues that each of Plaintiff's state law "failure to warn" tort claims are preempted by federal law based on the Supreme Court's recent holdings in *Plica, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) and *Mutual Pharmaceutical Company, Inc. v. Bartlett*, — S. Ct. —, 2013 WL 3155230 (U.S. June 24, 2013). Amylin contends that just as *Mensing* held that manufacturers of generic prescription drugs cannot be liable for certain state law failure to warn claims, and *Bartlett* held that manufacturers of generic prescription drugs cannot be liable for state law design defect claims based on inadequate warnings, distributors of prescription drugs, like McKesson, should likewise be shielded from liability because they can not legally change the labeling of a particular drug without subjecting themselves to potential liability under federal law.

In response, Plaintiff argues that federal preemption is an affirmative defense that goes to the merits of Plaintiff's claims, and therefore cannot be considered by the Court when determining whether a non-diverse party has been fraudulently joined. Moreover, to the extent the Court could consider the merits of Amylin's federal preemption argument, Plaintiff contends remand would still be appropriate because neither *Mensing* nor *Bartlett* directly apply to distributors of brand name drugs, such as McKesson. Finally, Plaintiff argues that even if *Mensing* did apply to Plaintiff's claims, allegations that

McKesson failed to use non-labeling means to warn of the drug's dangers would not obviously be preempted.

Although Amylin makes a valiant effort to argue that each of Plaintiff's "failure to warn" claims against McKesson are preempted under federal law, *Mensing* and *Bartlett* do not necessitate that conclusion. Instead, *Mensing* and *Bartlett* held that certain failure to warn claims against manufacturers of generic drugs are preempted under federal law because it is impossible for such entities to comply with both state and federal regulations. Neither case was directly applicable to distributors of brand name prescription drugs, such as McKesson. Therefore, even though the Court recognizes the logic of Amylin's argument, that the reasoning of *Mensing* and *Bartlett* apply equally to prescription drug distributors and could be extended, unless and until this rationale is extended to distributors, it is not obvious, accordingly to the well settled rules of this state, that Plaintiff has absolutely no claim against McKesson. *See, e.g., Caouette v. Bristol-Myers Squibb Co.*, No. C-12-1814 EMC, 2012 WL 3580667, at *2 (N.D. Cal. Aug. 17, 2012); *Halperin v. Merck, Sharpe & Dohme Corp.*, No. 11 C 9076, 2012 WL 1204728, at *11 (N.D. Ill. Apr. 10, 2012); *Hunter*, 582 F.3d at 1039 (stating that "[j]oinder is fraudulent [i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state") (internal quotation marks omitted). Accordingly, the Court finds Amylin's federal preemption argument without merit.

### 2. Failure to State a Claim Under California Law

Second, Amylin contends each of Plaintiff's state law tort causes of action fail to allege a viable claim against McKesson under California law. Amylin argues that other than a few overly broad statements in which Plaintiff alleges that McKesson is a large pharmaceutical distributor that "distributes to more than 40,000 customers," and "provides consolidation aides to pharmacists," Plaintiff makes no specific, independent allegations against McKesson. (Compl. ¶¶ 19-29.) Amylin asserts Plaintiff is unable to cure these deficiencies because McKesson is merely a distributor of Byetta, who cannot be liable under a failure to warn theory because it played no role in the manufacturer,

testing, marketing, or advertising of the drug—McKesson merely passed along unopened, unaltered boxes of Byetta to businesses in the healthcare industry. Amylin also bases its fraudulent joinder argument on the "learned intermediary" doctrine, and comment k to the Restatement (Second) of Torts.

Once again, the Court finds Amylin's arguments fail to satisfy its burden that Plaintiff cannot, even if afforded leave to amend, state a single viable cause of action against McKesson accordingly to the well settled laws of this state. For example, with respect to distributor liability for failure to warn, although the California Supreme Court has not expressly held that prescription drug distributors can be held strictly liable for failure to warn of known risks, it is a well settled general rule under California law that "[i]n a product liability action, every supplier in the stream of commerce or chain or distribution, from manufacturer to retailer, is potentially liable." *Edward v. A.L. Lease & Co.*, 46 Cal. App. 4th 1029, 1033 (Cal. Ct. App. 1996); *see also O'Neil v. Crane Co.*, 53 Cal. 4th 335, 342 (Cal. 2012) ("California law has long provided that manufacturers, distributors, and retailers have a duty to ensure the safety of their products, and will be held strictly liable for injuries caused by a defect in their products."); *Bostick v. Flex Equip. Co., Inc.*, 147 Cal. App. 4th 80, 88 (Cal. Ct. App. 2007) ("The doctrine of strict products liability imposes strict liability in tort on all of the participants in the chain of distribution of a defective product."). Therefore, in view of the relevant case law in this state, it appears that a strict liability failure to warn cause of action remains viable against McKesson.

Moreover, the learned intermediary doctrine provides that manufacturers do not have a duty to warn consumers of a drug's potential dangers if adequate warnings have been given to physicians (the "intermediaries"). *See Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1116 (Cal. 1996). The doctrine only "applies if a manufacturer provided adequate warnings to the intermediary." *Hill v. Novartis Pharmaceuticals Corp.*, No. 1:06-CV-00939-JSR, 2013 WL 1953753 (E.D.N.Y. May 10, 2013) (citing *Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23, 29, 117 Cal. Rptr. 3d 791 (Cal. Ct. App.

2010). Therefore, because Plaintiff alleges that each of the Defendants knew of the risks associated with Byetta and Victoza, and in the face of that knowledge failed to adequately inform physicians of such risks, it appears the learned intermediary doctrine is inapplicable. *See Maher v. Novartis Pharm. Corp.*, No. 07CV852 WQH (JMA), 2007 WL 2330713, at * 5 (S.D. Cal. Aug. 13, 2007). However, even if the Court found the doctrine applicable, remand would still be appropriate because the doctrine would apply to all defendants, making fraudulent joinder inapplicable. *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) ("When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made.").

Finally, Amylin's remaining arguments are also without merit. First, comment k to the Restatement (Second) of Torts "does not exempt distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given." *Black v. Merck & Co., Inc.*, No. CV03-8730 NMA JWX, 2004 WL 5392660, at *4 (C.D. Cal. Mar. 3, 2004). Therefore, because Plaintiff alleges that Defendants did not provide the appropriate warnings, comment k does not absolutely preclude a finding of strict liability against McKesson. Second, although Amylin alleges that Plaintiff's allegations are conclusory, and fail to identify specific allegations with respect to McKesson, this argument does not necessitate a finding of fraudulent joinder and falls far short of meeting Amylin's heavy burden. *See Hunter*, 582 F.3d at 1046 (stating that "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.") (quoting *Tillman*, 340 F.3d at 1279). Accordingly, even though Plaintiff's claims may nonetheless fail at a later stage in the proceedings, it is not obvious under the well settled rules of this state that Plaintiff has failed to state a single viable claim against McKesson, and that further amendment could not cure any

purported deficiencies. *See Nickelberry v. DaimlerChrysler Corp.*, No. C-06-1002 MMC, 2006 WL 997391, *1-2 (N.D. Cal. April. 17, 2006) (remanding action where defendant failed to demonstrate that the plaintiff would not be given leave to amend to cure the pleading deficiency regarding the alleged sham defendant).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to remand is hereby GRANTED. The Clerk of Court is instructed to remand the action to San Diego Superior Court.

IT IS SO ORDERED.

DATED: July 10, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge